FILED09 NOV '15 10:42USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SIR GIORGIO SANFORD CLARDY,

                    Plantiff,

          -V-

"JANE" HASCALL, "JANE" ROCHESTER, CATHY BRYANT-KAAE, COLLETTE PETERS, MARK NOOTH, JUDY GILMORE, JASON BELL, BILL DOMAN, HEIDI MACKENZIE, TIMOTHY COLEMAN, W.S. TAB WOOD, MICHAEL GOWER, STEVE FRANKE,

                    Defendant(s).

Case No. 2:15-cv-2098-CL

Hon.

Mag.

VERTIFIED CIVIL COMPLAINT

WITH JURY DEMAND

## I. INTRODUCTION

This is a civil supplemental action filed by Sir Giorgio Sanford Clardy, a state Prisoner, for damages, declaratory Judgment and injunctive relief under 42 U.S.C. §1983, alleging the denial and interference of legal Privileged correspondence, Professional representation, access to the court, free speech and rights of association in violation of the Privileges and Immunities Clause of Article IV of the U.S. Constitution, First Amendment Petition Clause of the U.S. Constitution and the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; and alleging the torts of Negligence and Professional Malpractice.

## II. JURISDICTION

A.    This court has Jurisdiction over the Plaintiffs claims of violations of Federal constitutional rights under 28 U.S.C. §1331.

B.    This court has Jurisdiction over the Plaintiffs claims of violations to state law rights

Page    1    of   53  : Civil Complaint

secured by Acts of Congress Providing equal rights of Persons within the Jurisdiction of the United States under 28 U.S.C. § 1343 (a)(3).

C.      This court has supplemental Jurisdiction over the Planiff's state law tort clams under 28 U.S.C. § 1367.

### II.  PARTIES

A.      Name of Plaintiff: Sir Giorgio Sanford Clardy

Security Identification No: 15778879

Address: Snake River Correctional Institution

777 Stanton Blud

Ontario OR 97914

B.      Defendant "Jane" Hascall is the law library coordinator of Eastern Oregon Correctional Institution (E.O.C.I.) whom first name is Presently unknown to Plaintiff. She is sued in her individual capacity.

Defendant "Jane" Rochester is the law library coordinator of Snake River Correctional Institution (S.R.C.I.) whom first name is Presently unknown to Plaintiff and she was generally responsible for ensuring law library access to Prisoners in the Intensive Management Unit (I.M.U.) at S.R.C.I. during the time relevant to this complant. She is sued in her individual capacity.

Defendant Cathy Bryant-Kaae is the inmate legal services correctional official of S.R.C.I. and is generally responsible for ensuring legal service aside from law library service to Prisoners in I.M.U. at S.R.C.I. She is sued in her individual capacity.

Defendant Collette Peters, Steve Franke and Michael Gower, is the Director and Assistant Director and East Institutions Administrator of Oregon Department of Correctional (O.D.O.C) and is in charge of the supervision and training of all correctional officials/employee and the administrative creation of administrative rules at S.R.C.I. She is sued in her individual capacity and official capacity.

Page __2__ of __53__ : Civil Complant

Defendant Mark Nooth was the superintendant during the time relevant to this Complaint, in charge of the supervision to I.M.U. at S.R.C.I. He is sued in his individual capacity.

Defendants Judy Gilmore and Jason Bell are the assistant superintendants in charge of the supervision to I.M.U at S.R.C.I. They are sued in their individual capacity.

Defendant Bill Daman was the Correctional Rehabilitation Services Manager during the time relevant to this complaint, in charge of the supervision to law library and inmate legal services for Prisoner in I.M.U. at S.R.C.I. He is sued in his individual capacity.

Defendant Heidi Mackenzie is the Correctional Rehabilitation Services Manager, in charge of the supervision to law library and inmate legal services for Prisoner in I.M.U. at S.R.C.I. She is sued in her individual capacity.

Defendants Timothy Coleman and W.S. Tab Wood were the defense attorneys to Nike Inc., Philp Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre in Multnomah County Circuit Court Case No. 14-01-00212. They are sued in their individual capacity.

## II. FACTUAL STATEMENT

On or about July 19, 2013 in the county of Multnomah, the Plaintiff was sentence to 100 years of imprisonment, do in part to the Plaintiff being convicted of Assault in the second degree (ORS 163.175) and Robbery in the first degree (ORS 164.415) based upon the Prosecutors theory that Plaintiff used a dangerous weapon Pursuant to ORS 161.015(1). The dangerous weapon was classified as Michael Jordan tennis shoes because under the circumstances they were used was readity capable of causing serious injury or death. After Plaintiff was Sentence to 100 years of imprisonment on July 23, 2013 Plaintiff was transferred from the custody Multnomah County Detention Center (M.C.D.C.) to the Oregon State Penitentiary (O.S.P.) Disciplinary

Page ___3___ of __53__ : Civil Complaint

Segregation Unit (D.S.U.) in-order to do his In-Take Process for the entry in the Oregon Department of Corrections (O.D.O.C.) because the original In-Take Center of O.D.O.C. in Wilsonville Oregon did not want Plantiff there based on his extreme sentence. Plantiff was housed in O.S.P.'s D.S.U. from July 23, 2013 until September 10, 2013 which during his stay he was subjected to a restricted access to law library services through a cell delivery system that he was completely unfamiliar with and in-adequately trained legal assistants for tort claims.

On September 10, 2013 Plantiff was transferred to Eastern Oregon Correctional Institution (E.O.C.I.) were he stayed until March 26, 2014. During Plantiff's stay at E.O.C.I. he spent somewhere around 170 days out of 196 days in D.S.U., in which defendant Hascall interfered, impeded, obstructed and frustrated his ability to present his litigation effectively and adequately through the denial of certain legal material when administrative rules state it is available and through unnecessary obstacles in obtaining legal material based on the lack of an adequately designed D.S.U. cell delivery system for law library services at E.O.C.I. which would aware Prisoners of all available avenues in their access to law library services instead of being a runaround guessing game styled system. When Plantiff arrived in E.O.C.I.'s D.S.U. the Property officer (Mr. Walsborn) was also the D.S.U. law librarian and his supervisor was defendant Hascall which she is assigned as E.O.C.I's law library coordinator. Correctional officer ("C.O.") Walsborn was assigned to make his error checks every Monday-Friday to issue, Prisoners D.S.U. requested legal material, Pick-up issued legal material from D.S.U. Prisoners and to keep track of the D.S.U. Satellite law library material which only consist of the resources listed in Exhibit 4 of Oregon Administrative Rules 291-139.

Sometime in November 2013 Plantiff was informed by C.O. Walsborn that legal material that are not in the Satellite law library would have to be requested through an Inmate Communication Form ("Kyte") to defendant Hascall at the General Population law library and she will take care of those request. This information that C.O. Walsborn advised Plantiff with was given to him

Page __4__ of __53__ : Civil Complaint

Verbally but Planiff still wasn't given a more detail avenue on the Proper Procedures to get specific legal research material. Never-the-less this same month Planiff started requesting specific legal research material he knew he needed from Previous legal research material he obtained while in General Population. Sometime in December 2013 Planiff started sending Kytes to defendant Hascall for general legal research material that he knew that the General Population law library had at E.O.C.I. in-order to continue my Preparation of filing a Product Liability tort claim, among other legal affairs, but defendant Hascall started creating unnecessary obstacles in requesting legal research material by requiring Planiff to request specific chapters and cites in statutory books and Continuing Legal Education (CLE) books which would cause him to be subjected to a guessing game.

For example, on December 23, 2013 one time Planiff sent defendant Hascall a Kyte requesting Oregon Revised Statute Title 2 Procedures In A Civil and Special Actions and Proceedings Chapter 30 Actions, among other oregon Revised statutes which in reshnce she stated, "You will need to let me know what ORS You are needing. Here, You requesting a whole chapter.". Defendant Hascall requirement was without her Providing Planiff with an avenue to identify what chapters, sections, etc where available for him to request and what form it should be filled at on, therefore subjecting him to guess which was impossible until March 3, 2014 when defendant Hascall intentionally Provided Planiff with some information that gave him alittle ideal of what the adequate Process was in getting law library services in D.S.U.

On and between January 2014 to Febrary 19, 2014 Planiff send defendant Hascall multiple Kytes requesting to check at a book called "Tort Clams for Legal Assistants" but instead of sending him the orisinal coPy or even a doPlicated coPy of this on March 3, 2014 resPonded to his request intentionally misapplying administrative rules by stating "The book Tort clams for Legal Assistance' is 1) not on the required list of books to be in D.S.U., 2) the only coPy that is available, 3) is a hard-covered book and 4) cannot be reproduced as it is coPyright Protected

Page ___5___ of _53_ : Civil Complaint

and is not Public domain material.", when administrative rules clearly state that "Inmates assigned to special security housing may request duplicated copies of specific related cases, digest topics, and other specific legal research material by use of the Department from Legal Library Service Request (CD 429D)", therefore having defendant Hascall acting in an individual capacity not represented by administrative rules.

In addition, defendant Hascall's response to Plaintiff's Kyte specifically stated that, "The Library is only required to provide materials to assist inmates in their criminal case not civil", therefore implying that Plaintiff could not recieve specific legal research material to litigate a civil lawsuit and citing administrative rules 291-139-0035 (4)(a)(b) to support it but defendant Hascall intentionally misconstrued and misapplied the administrative rules because it does not state that or even implies thats what it means. Defendant Hascall response was inadequate because it makes it seem like Plaintiff could only order legal research material from Exhibit 4 for the Satellite law library services to the administrative rules under OAR 291-139 but administrative rules clearly state that he can request duplic- ated copies of specific related case, digest topics, and other specific legal research material outside the scope of Exhibit 4 for the satellite law library service through a O.D.O.C. designed intrafacility and interfacility correspondence / loan system. During these circumstances, on January 1, 2014 Plaintiff filed with a motion requesting waiver of filing fee's his Product Liability Tort Claim based on Nike Inc., Philip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to provide instructions and/or warn Plaintiff of the dangerous characteristics of their manufactured and distributored Michael Jordan tennis shoes when they knew or reasonably should have known that it would subject him to be vulnerable to a foreseeable risk of harm to a deprivation of his liberty interest rights.

On January 9, 2015 Multnomah County Circuit Court Judge Dover assigned Plaintiff's Product Liability Tort Claim as case No. 14-01-00312 and ordered that all court fee's be waived.

Page ___6___ of __53__ : Civil Complaint

On March 10th, 2014 at 12:21Pm Candice Swanger in the behalf of Plaintiff served summons with the Product Liability Tort Claim to Nike Inc.'s associate General counsel Ginni Hanks and a 3:19Pm Ms. Swanger filed the Proof of Service with the Multnomah County Circuit Court for Case No. 14-01-00212. On March 24th, 2014 defendant Coleman attorney at of the Cosgrave Verteer Kester LLP contacted Plaintiff informing him that their firm would be representing Nike Inc. and the employee's of Nike Inc. in case No. 14-01-00212. On March 26, 2014 Plaintiff was transfered to Snake River Correctional Institution ("S.R.C.I.") to attend their Intensive Management Unit ("I.M.U.") Program which is designed like Punitive segregation, but once his arrival to I.M.U. Per O.D.O.C. Policy all his Property was taken from him so the Property officer could inspect it and it wasn't returned to Plaintiff until May 14, 2014 do to the Prison officials withholding it from him so during that time he filed multiple Grievance complaint to document the Problem.

On April 21, 2014 in behalf of the Cosgrave Verteer Kester LLP law firm defendant Wood filed their Answer and Affirmative Defenses against Plaintiff's Product Liability Tort Claim. On April 25, 2014 defendant Wood filed a Motion for Summary Judgment ("M.S.J.") and the M.S.J. hearing was scheduled for May 28, 2014 at 11:30AM. On May 5, 2014 Plaintiff was forced to file an extension of time based on evidentiary support showing that officials in his current incarceration were interfering, obstructing, frustrating and impeding his legal affairs. Some-time thereafter the Multnomah County Circuit Court Pro Tem Judge Robert Durham made an Order regarding Plaintiffs extension of time request with the following 3 directives (1) Postpone and reschedule M.S.J. hearing because on May 28, 2014, (2) made a "firm filing deadline of July 14, 2014" for Plaintiff to respond to the M.S.J. and (3) all other deadlines Pertaing to the liti-gation under statute or court rule remain applicable.

On June 2, 2014 Plaintiff filed a motion in request to amend tort claim Pursuant to ORCP 23 with a Purpose copy of his first amended verified tort claim and Jury trial demand

Page ___7___ of __53__ : Civil Complaint

In case No. 14-01-03212. This same day Plaintiff sent defendant Coleman a Request for Production of Documents and Request of Admission, among other documents with a letter advising him to cooperate with the discovery request. On June 11, 2014 defendant Wood a Motion Praecipe notifying Plaintiff that the M.S.J. hearing was scheduled on September 17, 2014 at 9:30 am in front of Pro Tem Judge Durham. On June 18, 2014 defendant Coleman and Wood responded to Plaintiff's Request for Production of Documents and Request of Admission by filing objections to the Production of any material he sought and objected to the admission request as being vague and confusing. On June 22, 2014 Plaintiff filed his response to defendant Coleman and Wood clients M.S.J. which, in summary, stated that "Plaintiff's discovery procedures have not been completed in-order for him to establish evidence to support his Product liability claim."

On July 1, 2014 defendant Wood contacted Plaintiff via legal phone call and requested an extension of time until August 25, 2014 to reply which Plaintiff objected to the sufficient amount of time they requested but suggested that he would allow an extension for the time set-at in Oregon Rules of Civil Procedures to start from the date of Postmark or date of receival which they admitted was on June 30, 2014. Plaintiff also requested that if he consented to any extension he would like defendants Coleman and Wood to stop their fraudlent and active concealment to his discovery request and assist him with scheduling a deposition via recording by stenographic and videographicim means with their clients but defendant Wood would not agree with Plaintiff. In addition defendant Wood told Plaintiff that since their were objections to the request for extension of time then they would be applying to the court for an extension of time. This same day defendant's Coleman and Wood filed an ex Parte motion for extension of time until August 1, 2015 via e-mail based on an upcoming holiday, counsel schedules and the delay in Prison mailing without them providing any showing of cause through substined evidence but the extension was granted anyway.

Page __8__ of _53_ : Civil Complaint

On July 7, 2014 Plaintiff filed a "Response In Objection to Defendants Motions for Extension of Time", requesting Multnomah County Circuit Court to "reverse there order to extend time for defendants and strike any motion to reply to Plantiffs response to defendants motion for Summary Judgment in this case if not filed 8 days Passed Postmarked date to Plant-iff's response to there Summary Judgment motion via mailing service.". Also, Plaintiff filed on "Order Regarding Plantiffs Response In Objection To Defendants Motion for Extension of Time and Plantiff's Motion for Sanction of Defendents for Non-Compliance to ORCP 47C" for Pro Tem Judge Durham to sign making Plaintiffs request more defined as followed "(1) Reverse Order of Extension of Time for Defendant's" and "(2) Extend Defendents date of reply to Plantiffs response to defendents motion for summary Judgment in coordnator with the Post-Mark date on envelope delivered with Plantiffs response Pursuant to ORCP 47 C and ORCP 10 C.".

This same day Plantiff once again served defendants Coleman and Wood clients a Request for Production of Documents and, in an attempt to correct Plantiffs Previous alleged vague and confusing admission request he served them with a new more defined set of Request for Admissions. On July 17, 2014 instead of filing a reply to "Plantiff Response to Defendants Motion for Summary Judgment" defendant's Wood and Coleman filed a "Reply to Plaintiffs Response In Objection To Defendants Motion for Extension of Time" and "Declaration of W.S. Tab Wood", "Defendants Response to Plaintiff's Motion for Sanction of Defendants for Non-Compliance to ORCP 47C". Although unclear at that time, it appeared that defendant Coleman and Wood wanted the Multnomah County Circuit Court to grant their motion for extension of time to file their reply and deny Plantiffs requested relief based on their scheduling conflict, without any supporting evidence. On July 30, 2014 defendants Coleman and Wood filed a five Page "Defendant's Reply in Support of Motion for Summary Judgment".

On August 5, 2014 defendant Coleman and Wood responded to Plantiffs second Request for

Page ___9___ of _53_ : Civil Complaint

Product of Documents and Request for Admission by once again fully objecting to the Production of any material he sought and objected to the admission request by them beating around the bush and not directly answering the admissions as laid out in the request. After review of defendants Coleman and Wood reply in support of M.S.J. it became apparent to Plaintiff that he needed to support his previous filed response in opposition to the M.S.J. with a declaration so on August 19, 2014 he filed his "Declaration In opposition to Summary Judgment Motion" with attached exhibits which among others statements he brought up defendants Coleman and Wood fraulent and active concealment of discovery request preventing him from litigating his claims. Based on Prison Policy, Prison officials, defendant Coleman and Wood misconduct which interfered, frustracted, impeded and obstructed Plaintiffs litigation, among other issues, he was forced to file a Motion, Affidavit and Memorandum requesting appointment of counsel. On August 25, 2014 Plaintiff filed his Motion and Declaration to take deposition of defendants Coleman and Wood clients which Plaintiff once again requested via a letter that defendant Coleman assist him with scheduling a deposition with their client.

On September 9, 2014 defendant Coleman and Wood filed a motion quashing Plaintiffs motion to take deposition and instead of sending it directly to Plaintiff they sent the documents to defendant Bryant-Kaaie in care of Plaintiff which interfered, obstructed, frustrated and impeded his access to the court through legal privileged correspondence with obstacles that lead to Plaintiff not even receiving those documents until September 18, 2014 a day after the M.S.J. hearing which Pro Tem Judge Durham ruled on those documents granting them, therefore preventing Plaintiff from adequately and effectively using the discovery process and opposing defendant Coleman and Wood clients motion. On September 17, 2014, oral arguments for the M.S.J. hearing was conducted based on the defendants Coleman and Wood clients arguments against Plaintiffs claims. Plaintiff attempted to address Pro Tem Judge Durham about Plaintiffs ability to present his claims effectively and adequately being interfered, impeded, obstructed and frustrated by Prison Policy, Prison

Page 10 of 53 : Civil Complaint

officials and defendants Coleman and Wood, therefore warranting an Order Preventing the Prison Policy, Prison officials and defendants Coleman and Wood from interfering, frustrating, obstructing and impeding his ability to present his claims adequately and effectively or consult and retain legal representation to do so. Eventually, during this hearing Pro Tem Judge Durham denied all of Plaintiffs filed motions and granted all of defendants Coleman and Woods clients motions which lead to Plaintiff case to be dismissed with Prejudice on October 17, 2014.

During Plaintiffs arrival at S.R.C.I. until the dismissal of case no. 14-01-00212 Prison Policy and/or Prison officials interfered, impeded, obstructed and frustrated his ability to present his litigation effectively and adequately through (1) the denial of certain legal material when administrative rules state it is available, (2) unnecessary obstacles in obtaining legal material based on the lack of an adequately designed I.M.U. cell delivery system for law library services at S.R.C.I. which would aware Prisoners of all available avenues in their access to law library services instead of being a runaround guessing game styled system, (3) denial and interfering with consulting and retaining legal representation and (4) interference with legal privileged correspondence.

First, on September 18, 2014 at approximately 9:20am after notarizing some of Plaintiffs of all, defendant Bryant-Kaae legal documents, gave him defendants Coleman and Wood clients "motion quashing Plaintiffs motion to take deposition which defendant Bryant-Kaae said was suppose to be delivered by her because it had her name on the enclosed letter and envelope. During this process Plaintiff noticed that it had his name on both the envelope and letter as "care of (401)" so he told her to send it through the mail room because it did not appear to have a tracking number stamped lable on it but she when asked refused. Defendant defendant Bryant-Kaae even refused to give Plaintiff the envelope and letter even though she blanked at her name with black ink, so he asked her when did she recieved the legal mail. In response, defendant Bryant-Kaae originally stated "Sometime during this week" Sometime before September indicating she recieved it between the September 18, 2014 and sometime after September 14, 2014.

Once defendant Bryant-Kaae realized what Plaintiff was Pointing at she immediately stated, "Mr. Clardy it doesnt matter when I recieved it all that matters is I Pass all mail out on Thursdays".

As Plaintiff stated before the documents recieved by defendant Bryant-Kaae was defendants Coleman and Wood motion and declaration for an order Quashing Plaintiff's motion to take deposition date September 9, 2014. Plaintiff filed a motion to take deposition of defendants Coleman and Woods client due to defendant Coleman and Wood fraudent and active concealment to Plaintiff's discovery request which on September 17, 2014, during the M.S.J. hearing Pro Tem Judge Durham stated, "I have reviewed all motions filed and there is no need for additional arguments". At that time Pro Tem Judge Durham denied Plaintiffs motions and granted all of defendant Coleman and Wood clients motions but Plaintiff was unaware of defendants motion for an order Quashing his deposition request. Defendant Bryant-Kaae knew that Plaintiff had a court appearance for case No. 14-01-00212 when she recieved the legal mail because she set the video court hearing up and scheduled it, as well as she knew where the legal mail came from since she had recieved legal mail Previously from defendant Coleman and Wood to be forward to Plaintiff which she even stated, "I'm not suppost to forward these kinds of documents but I was asked". Defendant Bryant-Kaae, none-the-less, intentionally and deliberately withheld the documents from Plaintiff in hopes of impairing his ability to effectively and adequately oppose a motion because of Plaintiffs multiple concerns with her handling of the inmate legal services.

On September 18, 2014 Plaintiff filed a Prisoner Grievance regarding defendant Bryant-Kaae interfering with his legal Privileged correspondence which she later responded by stating, "I am in receipt of the above Grievance in which You state I intentionally did not give Your mail to You in a timely manner, resulting in Your case being dismissed. The Post mark on the envelope is September 9, 2014. This means the envelope left seattle on the 9th of September. Once the mail

Page  12  of  53  : Civil Complaint

arrives at SRCI. Per Mail Rule 131, the Mail Proceeding staff have two (2) business days to process it and get it to the person it is addressed to. This particular envelope was addressed to you in care of me. I deliver mail to Special Housing on Thursdays. During this time, I also notarize any documents requiring a notary. On Thursday, September 18, 2014 I went to Special Housing for the purpose of notarizing documents and delivering Proof of service mail. After I completed notarizing your documents, I asked you which attorney you would like to call. I then handed you the papers provided by your attorney. You refused them, pushed them at me and raised your voice while asking me when I had recieved them. I told you I received them this week, (September 15-17). The papers landed on the ground, I picked them up and again attempted to give them to you. You stated you did not want them, knocked them out of the cuff port and they landed on the ground. I asked the officer to shut the cuff port and walked away. You also state in your grievance I knew you were scheduled for a court hearing. I schedule multiple inmates on a daily basis. I do not know what the hearing entails, nor do I attempt to remember when each inmate is scheduled. Therefore, I followed all procedures required of me.".

In response, Plaintiff filed a grievance appeal which stated, "I am appealing grievance No. SRCI 2014-09-084 for the level #1 appeal because I am not satisfied with (1) Mrs. Bryant-Kaae misleading version of the incident and (2) Mrs. Bryant-Kaae misapplication of (Mail Rule 131). This appeal is not adding to my grievance I am only clarifying of Mrs. Bryant-Kaae's misleading and and misapplication response. First of all, the legal mail came from Portland, Oregon not Seattle Washington which means it left Portland, Oregon on the 9th of September, 2014, so that is a misleading statement. Secondly, I never out-right denied to accept the legal mail, in fact, I asked Mrs. Bryant-Kaae for the envelope and letter that came with it for evidence of when it came, and if it adequately had a mail service tracking number on it since I noticed that both are names were on it until she marked off her name but she refused. Since she would not do that than I asked

Page ___13___ of __53__: Civil Complaint

her to Photo copy it for me so I could have evidence but she refused that and left so it is misleading for her to state those misleading statements without giving the complete events. Thirdly, she made it seem like her action weren't intentional ~~because~~ but she has had multiple dealings with Personally delivering legal mail to me from these same individuals and she has had multiple conversation with these individuals but she chose not to follow mail delivery rules.",

The Grievance appeal form went on to state, "Lastly, Per mail OAR 131, the mail Processing staff have two (2) business days to Process it and get it to the Person it is addressed to which, in summary, means Prisoners will be getting their mail in two (2) business days. It takes my legal mail from these individuals a max of 3 days to get to me from the Post mark which means at the max the mail got to S.R.C.I. on Friday, September 12, 2014 and two (2) business days from ~~the Postwards~~ that is September 16, 2014 which at the max is when I was suppose to get the legal mail ~~that~~ but Mrs. Bryant-Kaae intentionally misapplied the rule by delivery the mail on her time instead of consist to administrative rules. Within her own admission she said stated that she delivers mail to special housing on Thursdays which is not consist to mail rule 131 or any established rules. This becames an intentional act not only because she disregarded a rule but because the tracking number stamp on this legal mail has been distroyed which now obstructs the Process of verifying exactly when the legal mail arrived to S.R.C.I. and Mrs. Bryant-Kaae refused to give me that information. This grievance is not outside the scope of the grievance because as explained in the beginning of this appeal is to clarify the misleading statements of Mr. Bryant-Kaae and her misapplication of administrative rules. Per 42 U.S.C. 1997 (e) I am exhausting my administrated remedies to a Pending legal case against Mrs. Bryant-Kaae.".

On December 10, 2014 "Jane" Allender filed Plaintiffs first level grievance appeal by accepting it and sending it for response. On November 24, 2014 a response to Plaintiff's grievance appeal was typed by former SRCI Superintendent defendant Nooth since it said it was from him

Page  14  of 53 : Civil Complaint

but it was signed by defendant Gilmore. The response stated that the review of Plaintiffs allegation was assigned to defendant Mackenzie and based on her investigation, in summary, it was found that Plaintiff's allegation cannot be substantiated. A copy of this response was forward to defendant Gilmore, among other individuals which made them became aware of Plaintiff's complaints. On December 4, 2014 Plaintiff sent his final level grievance appeal to be filed and on December 8, 2014 "Jane" kee filed it and sent it for response. On February 24, 2015 a response was filed by defendant Franke denying to resolve Plaintiffs final grievance appeal which a copy of this response was forward to defendant Gower, Nooth and Gilmore among other individuals which made them aware of Plaintiff's complaints. Defendant Bryant-Kaae interference with Plaintiff legal privileged correspondence through an inadequately tracking mail delivery Process, untimely mail delivery and concealing and/or distroying of the legal envelope and letter impeded, obstructed and frustrated Plaintiff's ability to Present his litigation effectively and adequately by opposing defendants Coleman and Woods client's motion to quash deposition with supporting evidence.

Secondly, on July 15, 2014 Plaintiff sent SRCI law library a Legal Library Service Request (CD-429D) requesting "Portland Yellow Pages (Phone book)" in-order to obtain civil attorney's information so he can consult and retain an attorney through legal mail and/or Phone calls. On July 16, 2014 Plaintiff's Legal Library Service Request form was answered by stating the Portland Yellow Pages (Phone book) was NA (Not Available) and signed off by defendant Rochester as authorizing staff. This same day Plaintiff sent a "Special Housing Law Library Request Form" stating "On 7-15-2014 I sent at a CD 429D requesting a Portland Yellow Pages Phonebook (see tracking No #104270) so I can look up attorney in holes for retaining them but it wasn't sent to me and I would like to know why is that?" On July 18, 2014 defendant Rochester responded to Plaintiffs sPecial Housing Law Library Request Form Stating "No inmate can have a Phone book in his cell. You can request an address and if it is in the Phone book we will write it down for you. Phone

Page __15__ of __53__ : Civil Complaint

books are not for check-out. You also cannot be given envelopes from the law library if you are soliciting for an attorney. You need to use Your own envelopes for this.".

On July 20, 2014 Plaintiff sent defendant Rochester an inmate communication form ("Kyte") inquiring about Yellow Pages and issuance of legal indigent envelopes which stated, "I am attempting to informally resolve an issue You address with my legal Procedure which violates my constitutional rights. On 7-16-14 I wrote a legal Kyte (tracking No. 104355) addressing an issue of me not getting a Portland Yellow Pages Phonebook which I Previously requested on a CD vs ID (see tracking No. 104270). You addressed it with two responses (1) 'No inmate can have a Phone book in his cell. You can request an address and if it is in the Phone book we will write it down for You. Phones books are not for check-out' and (2) 'You also cannot be given envelopes from the law library if You are soliciting for an attorney. You need to use Your own envelopes for this.' First and foremost, the right to communicate with lawyers: 'is not limited to those already represented by an attorney, but extends equally to Prisoners seeking any form of legal or assistance', see Ruiz v. Estelle, 503 F. Supp 1365, 1372 (S.D. Tex 1980), aff. d. in Pertinent Part, rev'd on other grounds, 679 F. 2d 1115, 1153-55. Secondly, the right to hire and consult an attorney is Protected by the First Amendment's guarantee of freedom of speech, association and Petition... [T]he state cannot impede an individuals ability to consult with counsel on legal matters.... Furthermore, the right to obtain legal advice does not depend on the Purpose for which the advise was sought.... In sum, the First Amendment Protects the right of an individual or group to consult with an attorney on any legal matter, see Denius v. Dunlap, 209 F. 3d 944, 954 (7th Cir 2000)."

Plaintiff's Kyte went on to state, "With that being said, in-regards to Your first response I have a constitutional right to have access to the Yellow Pages so I can retain counsel and any resisting my access to the Phone book for attorney is a violation, see Foster v. Basham, 932 F. 2d 732, 734-35. In addition, it is impossible for me to have You write down addresses

Page ____16____ of ____53____ : Civil Complaint

and Phone numbers to attorney when I do not know the attorneys names listed in the Yellow Pages. Lastly, in-regards to your second response per OAR 291-139-0040(5)(a) entitles me to be providing with mailing services for legal mail to follow court and Procedural rules. As previously explained, the right to hire and consult an attorney is a well established court rule and Procedural rule so I am also entitled to legal envelopes and do not have to use my Personal indigent envelopes. I am once again requesting that I be provided with the Yellow Pages as requested in my legal kyte so I can retain counsel." On July 24, 2014 defendant Rochester responded to Plaintiff's kyte by only stating, "Please read Rule 291-139-0040(5)(A)" referring to administrative rule.

10.    On September 22, 2014 Plaintiff filed a grievance which stated, "Law Library coordinator Rochester has denial of providing me legal indigent envelopes and Phonebook in-order for me to consult and retain counsel Per my constitutional rights has caused my potentially meritorious civil claim to be denied which counsel would have been able present my case effectively and adequately, see attachments. My claim for civil relief was denied on 9-17-14." On September 24, 2014 "Jane" Allender filed Plaintiffs grievance denying it by stating, "Grievance must be recieved by the designated Grievance Coordinator within 30 calendar days of the incident". On September 25, 2014 Plaintiff re-sent his grievance which stated, "This is a request to reconsider Grievance No. SRCI 2014-09-098 for a misunderstanding. The incident /complant was denied for (1) grievance not recieved by grievance coordinator with 30's of incident and (a) more than two grievances recieved in a week. The incident of my claim was a continues of issues of legal indigent envelopes and Phonebook being denied to me by SRCI law library impeding and frustrating my right consult and retain legal counsel which was used as an attachment but the complant was that because of this continues denial on September 17, 2014 my civil case was obstructed by me not having adequate legal counsel to effectively present my case effectively which caused my potentially meritorious

Page  17  of  53  : Civil Complaint

Civil case to be impeded and frustrated. This part the date of the incident at September 17, 2014 which is within 30 days. Lastly, the week of September 21-27, 2014 I only sent the grievance I'm addressing and one other grievance I sent on 9-23-14 dated 9-22-14 which entitles me to file the grievances. For these reasons grievance No. SRCI 2014-09-098 should be reconsidered because it was denied wrongfully.

On September 29, 2014 "Jane" Allender filed Plaintiff's grievance by denying it but on October 3, 2014 she re-filed Plaintiff's grievance by accepting it and sending it for response. On October 8, 2014 defendant Rochester responded to Plaintiff's grievance which was signed off by defendant Mackenzie and stated, "This complaint is regarding your inability to check out a phonebook while in Special Housing (IMU) and you were not provided an envelope. On July 18, 2014 (Tracking #104355) you requested to check out a Portland Phonebook. You were informed that no inmate is allowed to have a phonebook in his cell, however you could request an address and if it is in the phonebook, we would provide you with the information. No inmate is allowed to have a phonebook in their cell, per security.".

The response went on to state, "On 7-24-2014 you requested an envelope to Mr. Gower under type of filing you wrote grievance appeal. At the time of request you did not have sufficient funds in your trust account and therefore were considered indigent. Pursuant to OAR 291-139-0040 (5)(a), an inmate without sufficient funds in his/her trust account to pay for the cost of core necessary supplies and mailing services will be providing such supplies and mailing services, notwithstanding the inmate indigent status, to make required filings with the courts and parole board authorities required by law, and court and procedural rules and this does not include general correspondence with attorneys. Legal documents are described in OAR 291-139-0010(5) as pleadings, legal motions and memoranda, affidavits, court orders and judgments or other necessary papers submitted to a court or Paroling authority. The mailing of a Grievance Appeal does

Page 18 of 53 : Civil Complaint

not constitute a required legal filing with the court and/or Parolin9 authority in accordance with appropriate rules and guidelines.".

In response Plantiff filed a 9rievance appeal which stated, "I am appealin9 9rievance #SRCI 2014-09-154 for the level #1 appeal because I am not satisfied with the initial response based upon J. Rochester providin9 misleadin9 information. This appeal is not addin9 to the record it is clearly for the sake of assertin9 some arguments that I addressed in my original 9rievance and to clearify Rochester's misleadin9 statements. First, as I explained in my inmate communication form (trackin9 #104630) to Rochester it is my right to be free from obstacles that that impede, frustrate and obstruct my right to retain and consult legal counsel so the conduct that Rochester is imposin9 on me is in violation to that right which attempts to force me to provide her with information which I do not know my-self is and has caused obstruction, impedment and frustration to my potentially meritorious case. Lastly, Rochester has mislead information in her response as makin9 my allegation about recievin9 legal envelope is based on an incident on 7-24-14 when I requested an envelope to Michael Gower (Assistant Director). At no time in my original 9rievance #SRCI 2014-09-098, my reconsidered 9rievance #SRCI 2014-09-154 or any provided attachments did I ever allege the incident happen from bein9 denied legal envelopes to a Assistant Director. In fact, I clearly stated in all my documents which addressed my legal envelope situation as statin9 that the incident of my claim is, a continue above, issue of 'legal indigent envelopes' and phone book bein9 denied to me by SRCI Law Library impedin9 and frustratin9 my right to consult and retain 'legal counsel'. The Assistant Director Mr. Gower is not legal counsel So it clearly shows I am talkin9 about an attorney and in addition my 'kyte' that is an attachment was dated on 7-20-14 about this same issue so it is impossible for me to talk about an issue from 7-24-14."

On October 24, 2014 "Jane" Allender filed Plantiffs first level 9rievance appeal by

Page  19  of  53  : Civil Complaint

accepting it and sending it for response. On November 24, 2014 a response to Plaintiff's Grievance appeal was typed by former SRCI superintendent defendant Nooth since it said it was from him but it was signed by defendant Gilmore. The response stated that the review of Plaintiff's allegation was assigned to defendant Mackenzie and upon her review, in summary, Plaintiff was allegedly "Provided services that were reasonable and in accordance with the OAR Rule 291-139-0040(5)(a) and OAR 291-139-0010(5). The law Library Coordinators have acknowledged your requests and have responded appropriately." A copy of this response was forward to defendant Gilmore, among other individuals which made them became aware of Plaintiff's complaint. On December 4, 2014 Plaintiff sent his final level grievance appeal to be filed and on December 8, 2014 "Jane" Kee filed it and sent it in for response. On February 24, 2015 a response was filed by defendant Franke denying to resolve Plaintiff's final grievance appeal which a copy of this response was forward to defendant Gower, Nooth and Gilmore among other individuals which made them aware of Plaintiff's complaint. Defendant Rochester interference and denial with Plaintiff Professional representation, free speech and rights of association through too inadequate access to Phonebooks and indigent legal mail, therefore impeding, obstructing and frustrating Plaintiff's ability to present his litigation effectively and adequately by consulting and retaining an attorney for representation.

Thirdly, in an effort to consult and retain legal representation on May 1, 2014 Plaintiff sent "Inmate Legal Services" a kyte stating," I need two legal notary's and I need imminent Phone calls for Case No. 14-01-00312 deadline 5-28-14 Please see enclosed document that I need back. I need to retain an attorney for this issue so I need to call the following attorneys: David Meyers (503) 224-1096, Jason KaFoury (503) 224-2647 ext 103 and Daniel S. Margolin (503) 546-6374." On May 15, 2014, Plaintiff was given the black out-going legal phone and was told by the assignment correctional officer that he was scheduled for a legal phone call. Moments later the legal phone rang so Plaintiff answered it and defendant

Page __20__ of __53__ : Civil Complaint

Bryant-Kaae addressed Plaintiff by stating who she was and how she was conducting a collect legal phone call for Plaintiff. Defendant Bryant-Kaae further told Plaintiff that just because he had a deadline she will only allow him to call one of the attorneys but for future notice collect calls to attorneys are only allowed to one attorney within a 30 day deadline every first and third Thursday of each month and asked him what attorney he wanted to call.

In response, Plaintiff attempted to inform defendant Bryant-Kaae that he really needed to call each attorney because he needed to consult and retain legal representation but she denied it stating she has several other collect calls to conduct. Instead of continuing a dispute Plaintiff asked defendant Bryant-Kaae to call David Meyer which she clicked over to the other to the other line and moments later she got back on the line and told Plaintiff that Mr. Meyer phone does not except collect calls. Plaintiff then asked defendant Bryant-Kaae if she would call Jason Kafoury because of the no-answer to the other attorney which she clicked over to the other line and moments later she got back on the line and told Plaintiff that Mr. Kafoury refused the call so Plaintiff asked her to call the last number but she refused by stating that she had other inmates to make calls for and she can't do back. In response, Plaintiff asked her, "so are you going to deny my rights to talk to an attorney" which she said, "yes" and then hung up on him. This same day defendant Bryant-Kaae responded to Plaintiff's kyte stating, "Inmate Clardy, I attempted to place collect calls to 503-224-1056 do not except collect calls called place called call to 503-224-2647 they refused the call." Attached with defendants Bryant-Kaae response she provided Plaintiff with a letter addressed to "All SRCI Inmates and Attorneys" from former Correctional Rehabilitation Service Manager defendant Doman which inquired about attorney visitations and collect/in-coming legal phone calls.

On September 7, 2014 in an effort to once again consult and retain legal representation Plaintiff sent "Inmate Legal Services" a kyte stating, "I have a legal deadline within 30

Page ___21___ of ___53___ : Civil Complaint

days (see attachment) and I need to contact one of three attorney's Leonard Berman (503)473-8787, Walter J. Ledesma (503)981-0101 or John C. Rothermich (503) 228-3939 ext. 3129."

On September 18, 2015, Plaintiff was given the black out-going legal phone and was told by the assignment correctional officer that he was scheduled for a legal phone call. Moments later the legal phone rang so Plaintiff answered it and defendant Bryant-Kaae addressed Plaintiff by stating who she was and how she was conducting a collect legal phone call for him. Defendant Bryant-Kaae further told Plaintiff that she will only allow him to call of the attorneys listed on his kyte and asked him which would it be so Plaintiff told her to call Mr. Berman. Defendant Bryant-Kaae clicked over to the other line and moments later she got back on the line and told Plaintiff that Mr. Berman did not accept the call. Plaintiff then attempted to asked Defendant Bryant-Kaae if she could call another attorney but she said that was his only chance and whenever he got another 30 day deadline she will attempt to call another attorney but only one then she hung up on him.

This same day defendant Bryant-Kaae answered Plaintiffs kyte that he sent-at on September 7, 2014 by stating, "Inmate Clardy as I have stated to you several times on collect call you get ONE collect call. When I asked this morning which att'y you wanted you argued with me so I attempted to call the first one 503-473-8787. They do not except collect calls. Your paperwork is attached." On September Plaintiff filed a grievance which stated, "Inmate legal services out-going legal collect call policy (see attachment) has caused my potentially meritorious civil claim to be denied based on the policy not allowing me the adequate ability to consult and retain counsel by only given me "one" out-going legal collect phone call within a 30 day deadline to an appointed or retained counsel. I have previously complained about this policy but the issue now is it has caused my civil claim to be dismissed. Mrs. Cathy F. Bryant-Kaae was the individual who voically enforced this uncon-

Page 22 of 53 : Civil Complaint

stitutional violation. If I was allowed to consult and retain counsel then my civil case would have been presented effectively and adequately." On September 29, 2015 "Jane" Allender filed Plaintiffs grievance by accepting it and sending it for response.

On October 22, 2014 defendant Bryant-Kaae responded to Plaintiff's grievance which was signed off by defendant Mackenzie and stated, "I am in receipt of the above grievance where you state your claim was denied because you were not allowed to make a collect call. I have informed you on numerous occasions you are allowed to make on (1) collect call. On September 7, 2014, I asked you which attorney on the list you provided, did you wish to call. You argued with me and refused to give an answer. I then attempted to call the first attorney on your list. This attorney does not accept collect calls. It is your responsibility to know which attorneys accept collect calls and to provide me with a name. I responded to this on your inmate communication dated September 9, 2014. I also provided you with the procedure for attorney visitations and phone calls. You request the policy be amended to allow inmates 'reasonable' access to counsel. I do not have the authority to accomplish this. You will have to consult the Rules and Policy Coordinator in Salem. Therefore, I have followed all of the procedures required of me in the performance of my job."

On November 1, 2014 Plaintiff filed a grievance appeal which stated, "I am appealing grievance No. SRCI 2014-09-145 for the level #1 appeal because I am not satisfied with Mrs. Cathy F. Bryant-Kaae's response based on (1) her misleading information and (2) her in-direct participation and failure to act. This appeal is not adding to my initial complaint, I'm only clarifying her misleading statement and looking at her intentional failure to protect and service when she has knowledge of a constitutional violation. First, on September 7, 2014 I gave her three attorneys I would like to call in an attempt to consult and retain an attorney which she ignored me while we where on the black paysol phone and clicked over to the other line. When she clicked back over to the line

Page 23 of 53 : Civil Complaint

she stated that the first attorney she called does not accept collect calls which I once again explained to her the law on retaining and consulting attorneys but she said "better luck next time" and hung up on me."

The grievance appeal went on to state, "Lastly, within Mrs. Bryant-Kaae own admission she has acknowledge my complaint but directs me to take it up to the Rules and Policy coordinator and makes it seems as she is only 'following orders/ Policy'. Prison Personel may be held liable for their failure to act if it results in a constitutional violation, Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir 1990)(Prison officials 'can't just sit on their duff and not do anything' to prevent violations of rights). It appears long established that Public officers are not shielded from civil liability for illegal acts simply because they act upon direction of Policy-making superiors. Under Diver v. Department of Corrections, 921 F.2d 191, 193-94 the court stated, 'complaint alleging that inmates could only call their attorney if they had a court appearance within 30 days was not frivolous'. Thus, when a Policy like address in my complaint states the same thing it becomes a matter of constitutional violation that Mrs. Bryant-Kaae has knowledge." On November 7, 2014 "Jane" Allender filed Plaintiff's grievance appeal by accepting it and sending it for response.

On November 24, 2014 a response to Plaintiff's grievance appeal was typed by former SRCI Superintendent defendant Nooth since it said it was from him but it was signed by defendant Gilmore. The response stated that the review of Plaintiff's allegation was assigned to defendant Mackenzie and upon her review, in summary, that, "Attorney calls initiated through Inmate Legal Services are only allowed if the attorney accepts collect calls. It is your responsibility to know which attorneys will accept collect calls. In regards to your request to amend ODOC's Policy regarding collect calls; Policy amendments are not completed by Snake River Correctional Institution staff. The Policies are set in Place and are to be upheld by ODOC staff and inmates." A copy of this response was forward to defendant Gilmore, among other individuals which made

Page __24__ of _53_ : Civil Complaint

them became aware of Plaintiffs complaint. On December 4, 2014 Plaintiff sent his final level grievance appeal to be filed and on December 8, 2014 "Jane" Kee filed it and sent it in for response.

On February 24, 2015 a response was filed by defendant Franke denying to resolve Plaintiff's final level grievance appeal which a copy of this response was forward to defendant Gower, Nooth and Gilmore among other individuals which made them aware of Plaintiff's complaint. Defendant Bryant-Kaae, Denney and Peters interference with Plaintiffs professional representation, free speech and rights of association by misapplying administrative rules through only allowing him one collect call to consult and retain an attorney each scheduling and/or authorizing Policies that only allow Plaintiff the access to consult and retain an attorney through a collect call when as within a 30 day deadline which impeded, obstructed and frustrated Plaintiffs ability to present his litigation effectively and adequately by consulting and retaining an attorney for representation.

Further, in an attempt to obtain evidence of Plaintiff being denied and interfered with legal research material so he can consult and retain an attorney for representation on September 18, 2014 he send the Law Library two Special Housing Law Library Request forms. The first Special Housing Law Library Request form requested the "Oregon State Bar Dictionary" and the other one stated that he needed "all civil attorney names and info listed in the Oregon State Bar Dictionary". On September 22, 2014 defendant Rochester answered both Special Housing Law Library Request form which one of them she did not send the Oregon State Bar Dictionary and stated, "the Oregon state bar is not available Please put the name of attorney you are looking on a new Kyte and we will get there info." On the Special Housing Law Library Request form it stated "We cannot Provide a random list of attorneys. I can give you info if you specify a certain attorney(s) you need info on. Also, the OSB directory doesnt specify what kind/field each attorney is concentrated on." On October 9, 2014 Plaintiff filed a grievance

Page 25 of 53 : Civil Complaint

but on October 13, 2014 "Jane" Allender denied it and sent it back for correction based on what she stated, "Per the grievance rule: Must include a complete description of the incident, action, or application of rule, including date and approximate time."

On October 21, 2014 Plaintiff filed a corrected grievance which stated, "This incident happen on 9-24-14 but I had to correct my Previous grievance per returned grievance form. On 9-24-14 I was provided by Ms. Rochester (Law Library coordinator) a frualent "Exhibit 4" form that states "Oregon State Bar Directory (not available for check-out) Please provide name of the attorney needed". This version of the form is frualent because the true and original OAR 291-9134 "Exhibit 4" form doesn't state that it is not available for check-out, see attachments. Rochester is denying me the opportunity to seek attorneys information unless I provide a name in-order so I can retain and consult an attorney. To not allow me the book is invalid and only giving me access to attorney's infor-mation unless I provide a name is invalid because it forces me to provide names that I do not know which defeats the meaning of seeking unknown name legal counsel in-order to attempt to consult and retain which is a major reason why my ability to present my civil case effectively on 9-17-14 was obstructed, impeded and frustrated by subjecting me to obstacles to retain and consult with an attorney causing my potentially meritorious civil claim to be denied. This grievance is filed on the misapplication to the administrative rules and frualent documentation." On October 23, 2014 "Jane" Allender filed Plaintiff's grievance by accepting it and sending it for response.

On October 24, 2014 defendant Rochester responded to Plaintiff's grievance which was signed off by defendant Mackenzie and stated, "You were informed that you needed to provi-de the name of the attorney so we could provide you with the information. Exhibit #4 has been modified to better assist an inmate when ordering the correct material. It is the Policy of the law library and department to not provide envelopes to indigent inmates who are trying to sol-icit attorneys. I also want to add that the Oregon State Bar does not indicate what field

Page ___26___ of ___53___ : Civil Complaint

the attorney specializes in. 291-139-0040(5)(a): An inmate without sufficient funds in his/her trust account to pay for the costs of necessary supplies and mailing services will be Provided such supplies and mailing services, notwithstanding the inmates indigent status, to make required filings with the courts and Parole board authorities required by law, and court and Procedural rules. This does not include general; correspondence with attorneys."

On November 1, 2014 Plaintiff filed a grievance appeal which stated, "I am appealing grievance # SRCI 2014-10-063 for the level #1 appeal because I am not satisfied with her response based on (1) her misleading information and (2) her misapplication of administrative rules. This appeal is not adding to the record/initial grievance I am only clarify her misapplication of the rules and misleading statements. First, within Mrs. Rochester own admission 'Exhibit 4 has been modified', this modification is fraudent to the administrative rules because D.o.c. hasn't modified Exhibit 4. As explain in the initial grievance she has Provided a Exhibit 4 to look similar in ways in-order to Protray it is consist to administrative rules but, in fact, she has made it fraudent because it is not consist to administrative rules. Secondly, she has Put an unnecessary obstacles which is similar to a guessing game on which attorney I need because I don't even know the attorney name I am seeking because I am attempting to retain an unknown name attorney for my legal litisations."

The grievance appeal went on to state, "Lastly, Rochester has misapplied OAR 291-139-0040(5)(a) by making the defination or retaining and consulting an attorney as being general correspondence with an attorney. OAR 291-139-0040(5)(a) entitles an indigent Prisoner to be Provided mailing services to make required filings consistent to law and court Procedural rules. The right to hire and consult an attorney is Protected by the First Amendment's guarantee of freedom of speech, association and Petition, which clearly shows it is law that OAR 291-139-0040(5)(a) but Rochester intentionally continues to misapply it. In addition, OAR 291-139, Exhibit 4 (4)(b)

Page __27__ of __53__ : Civil Complant

does not say "(not available for check out) Please Provide name of the Attorney needed" which means Rochester is not following administrative rules." On November 7, 2014 "Jane" Allender filed Plantiff's grievance appeal by accepting it and sending it for response.

On November 24, 2014 a response to Plantiff's grievance appeal was typed by former SRCI Superintendent defendant Nooth since it said it was from him but it was signed by defendant Gilmore. The response stated that the review of Plantiff's allegation was assigned to defendant Mackenzie and upon her review, in summary, that, "it was documented you requested a directory for the Oregon State Bar. Snake River Correctional Institution (SRCI) Policy does not permit inmates to have that requested book in their cells. Please request information for a specific attorney and the law library will Provide you with the information. Upon review of the evidence Provided, you were Provided services that were reasonable and in accordance with the OAR Rule 291-139-0040(5). The law library coordinators have acknowledged your requests and have responded appropriately." A copy of this response was forward to defendant Gilmore, among other individuals which made them become aware of Plantiff's complaint. On December 4, 2014 Plantiff sent his final level grievance appeal to be filed and on December 8, 2014 "Jane" Kee filed it and sent it in for response.

On February 24, 2015 a response was filed by defendant Franke denying to resolve Plantiff's final level grievance appeal which a copy of this response was forward to defendant Gower, Nooth and Gilmore among other individuals which made them aware of Plantiff's complaint. Defendant Rochester interference and denial with Plantiff Professional representation, free speech and rights of association through inadequate access to the Oregon State Bar Dictionary, therefore impeding, obstructing and frustrating Plantiff's ability to Present his litigation effectively and adequately by consulting and retaining an attorney for representation.

Lastly, on March 27, 2014 a day after Plantiff was transferred to SRCI he sent the

Page __28__ of __53__ : Civil Complaint

law library there a legal guide regarding multiple items such as "tort claim for legal assistant" book and "forms list" in-order to familiarize him-self with what legal material were authorized. On March 31, 2014 the law library signed Plaintiff up for a legal assistant phone call to discuss his legal questions and provided legal material but failed to provide him with his tort legal research material, nor did they provide him with any information on how exactly to obtain the legal material he was not provided. It wasn't until late April 2014 when a Prisoner in IMU adviced Plaintiff with information on the use of "CD 429D" forms in IMU and all the information that can be obtained from that CD 429D form due to the fact of the law library coordinator Rochester (which is a defendant) designing it as to make it appear as Prisoner can only be allowed to obtain legal material off a Exhibit 4 list to OAR 291-139 when filling out legal request even though Oregon Administrative Rules (O.A.R) allow all specific legal research material in the law library beyond Exhibit 4 so it subjects Prisoners like Plaintiff to unnecessary obstacles in obtaining legal material and being denied specific legal material which where in the law library.

On October 9, 2014, Plaintiff filed a grievance based on the fact that Plaintiffs ability to present his civil litigation in case No. 14-01-00212 effectively was obstructed, impeded, and frustrated by unnecessary obstacles to obtain specific legal material and denied other legal material, therefore causing his potentially meritorious civil litigation to be denied. On October 13, 2014 "Jane" Allender denied Plaintiffs grievance and returned it for correction for what she stated, "must include a complete description of the incident, action, or application or rule, including date and approximate time." In response, Plaintiff sent his corrected grievance on October 23, 2014 but on October 28, 2014 "Jane" Allender denied Plaintiffs grievance by stating, "A grievance that has been returned to the inmate by the grievance coordinator for procedural reason cannot be appealed. The inmate may elect to resubmit the grievance to the griev-

Page  29  of  53  : Civil Complaint

ance coordinator within 14 calendar days from the date the grievance was sent back to the inmate if the procedural error can be corrected." Mrs. Allender denial was intentionally done to impair, impede, frustrate and obstruct Plaintiff's grievance process since he sent the grievance 4 days before it was due to be filed which it shouldn't have taken 4 days to process.

In an attempt to informally address Plaintiff's concern of his grievance being denied with grievance on October 29, 2014 he sent "Jane" Allender a Kyte, which stated, "Enclosed please find my resubmitted grievance No. SRCI 2014-10-062 for reconsideration. On 10-13-14 you sent me a returned grievance form returning grievance No. SRCI 2014-10-062 to correct it status,' Per the grievance rules: must include a complete description of the incident, action or application of rule, including date and application time'. On 10-23-14 I sent my corrected version with (1) date being 9-17-14 and (2) the incident being Mrs. Rochester obstacles being inconsistent to administrative rules causing my ability to present my civil case effectively obstructed, impeded and frustrated by her unnecessary obstacles to obtain legal material and denial of other legal material leading to my case being dismissed. Today I received another returned grievance form returning grievance No. SRCI 2014-10-062 stating 'Per the grievance rule: A grievance that has been returned to the inmate by the grievance coordinator for procedural reason cannot be appeal'. I am resubmitting this grievance for reconsideration because I did not send it in for either appeal, in fact, it was sent on a regular grievance form."

In response, on November 3, 2014 "Jane" Allender answered Plaintiff's Kyte by stating, "Your initial grievance was returned to you for correction on 10/13/14. I did not receive the corrections within the 14 days allowed for corrections, therefore your grievance was denied." On November 9, 2015 "Jane Taylor" Allender denied Plaintiff's grievance and returned it for correction which he stated, "Please be more specific and provide what you requested and what was denied." In an attempt to clarify the grievance Plaintiff filed a new corrected version

Page 30 of 53 : Civil Complaint

of his grievance on December 14, 2014. On December 18, 2014 James Taylor denied Plaintiffs grievance and returned it for correction once again which this time he stated, "Please be more specific and provide what you requested and what was denied. You still refer to obstacles. What specific obstacle are you referring to. You need to be specific as to the action staff took or failed to take so that can respond."

On December 30, 2014 Plaintiff filed a corrected version of grievance which stated, "On December 3, 2014 I sent SRCI grievance coordinator a grievance based on Mrs. Rochester obstructing, impeding and frustrating my ability to adequately present a civil case that this conduct ended up being the moving force to my case being dismissed, see attachment. On December 11, 2014 I recieved a returned grievance form from Mr. J. Taylor (grievance Coordinator) returning my grievance for correction in-order to be more specific about my complaint. On December 12, 2014 I sent Mr. J. Taylor my first corrected version of this complaint but on December 23, 2014 it was sent back from him requesting me to be more specific once again, see attachment. In response, my corrected complaint is that I requested the law library (which was supervised at that time by Mrs. Rochester) to provide me with all information to legal material that I could have access to while in IMU and how to go about obtaining it while in IMU. In response, I was given an "Exhibit 4 form", "form list" and "special Housing Oregon Revised Statutes By Title form" but I was never given the "Exhibit 1 form", "Exhibit 2 form" and "Exhibit 3 form" which I was unaware that I could, in fact, have access to those legal material until a Prisoner in IMU told me. Therefore, Mrs. Rochester failed to Provided me with all information available for Prisoners to have access to it and/or how to obtain it which became an unnecessary obstacles in-order to re-tain that information thus obstructing, impeding and frustrating my ability to adequately present a civil case which this conduct ended up being the moving force to my case being dismissed."

On January 15, 2015 "Jane" Kee filed Plaintiffs grievance by accepting it and sending

Page __31__ of __53__ : Civil Complaint

it for response. On January 8, 2015 defendant the law library Coordinator Rolas responded to Plaintiffs Grievance which was signed by defendant Mackenzie and stated, in summary, "Mr. Clardy all inmates are afforded access to library services if available, if the designated law library does not have said material available Iw may use a CD 439D in ordering other materials that are available in other level law library's. Mr. Clardy was given the rule on April 10, 2014 which included exhibits 1, 2, 3 and 4, we also informed Iw to use a CD 439D for ordering materials that were not available on the exhibit 4 on kyte # 100362 since April Mr. Clardy has utilized the CD-439D when ordering materials that are not on the exhibit 4. Individuals housed in special housing are restricted per rule 291-139 to exhibit 4; unless they use a CD 439D, then they may check out materials from other level libraries if available."

On January 13, 2015 Plaintiff filed a Grievance appeal which stated, "I am appealing Grievance No. SRCI 2014-12-071 for the level #1 appeal process because I disagree with the first response for the two following reasons: (1) My grievance was on Mrs. Rochester but Mrs. Rolas responded to it which I have no current issue with her so Mrs. Rochester should have answered the grievances and (2) I disagree with Rolas response because it is misleading as if Rochester has provided me with all information without imposing any obstacles that obstructed, frustrated or impeded but prior to legal kyte #100362 I requested multiple times legal material but was told it was not available because it wasn't on exhibit 4 I could not get it without Iut telling me the adequate way of ordering the material. see trucking legal kyte Nos. 100049, 99995 and 99695 for examples. This was prior to legal kyte #100362 which Rolas referred to but was after many times being obstructed, frustrated and impeded as if it was available because it wasn't on the exhibit 4 form which is exactly what my original grievance states." On January 21, 2015 "June" Kee filed Plaintiffs Grievance by accepting it and sending it for response.

On February 6, 2015 a response to Plaintiffs Grievance appeal was typed by former SRCI

Page 32 of 53: Civil Complaint

Superintendent defendant Nash since it said it was from him but it was signed by defendant MacKenzie. The response stated that the review of Plaintiff's allegation was assigned to defendant Mackenzie and based on her investigation, in summary, that based on the available information, there was still insufficient evidence to substantiate her allegation. A copy of this response was forward to defendant Gilmore, among other individuals which made them become aware of Plaintiffs complaints. Based on an incident destructions Plaintiff he sent his final level Grievance appeal explaining his untimely filings which stated, " I am appealing Grievance appeal No. SRCI 2014-12-071A for the level #2 appeal because I am not satisfied with the responses, see attachments. Pursuant to OAR 291-109-0170 (2)(c) this Grievance wasn't able to be filed within the timeline established based on the fact that I was in the process of sending it at on Feb 15, 2015 during nighttime mail pick up but I was cell extracted on Feb 15, 2015 at 8:25 am. All my Property was Property was taken and not given back to me until Feb 26, 2015 at around 7:30 Pm, so because of this reason this Grievance appeal should be allowed."

On March 3, 2015 James Taylor denied Plaintiffs Grievance appeal and returned it for what he stated, "Appeals must be filed within 14 calendar days of the date the employee response was sent to the inmate." In an attempt to informally address Plaintiffs concern and provided more details on what prevented him from timely filing his Grievance appeal he sent Jane Taylor a Kyte understating on March 4, 2015. On March 6, 2015 James Taylor answered the Kyte which, in summary, denied Plaintiffs request to reconsider Processing his Grievance appeal based on excusable neglect. On March 9, 2015 Plaintiff responded to James Taylor response Kyte by stating," This Kyte is in response to your response to my Kyte dated 3-4-15 which you responded to on March 6, 2015 and I received on March 9, 2015. once again enclosed are Grievance appeall for Nos. SRCI 2014-12-071A and two Grievances for Nos. SRCI 2015-03-021 and SRCI 2015-03-020. Your response, in summary denied to reconsiderate these documents based on (1) the documents where not in by Feb 24, 2015 and (2) the staff allegedly tried to get me my Property

Page 33 of 53 : Civil Complaint

on Feb 19, 2015 but I opted to try and be disiplined instedd."

Plaintiff's response kyle went on to continue and stated," First of all, as explained in my previous response I wasn't able to get them in by the 30 day timeline because on Sunday Feb 15, 2015 at around 8am I was cell extracted at my cell and all my property was taken. These grievances and grievance appeal where completed and ready to be placed in the mailing service on Sunday Feb 15, 2015 that night but my property was taken which I did not get back until Feb 26, 2015 at around 7:30pm so I wasn't able to get it sent out until March 1, 2015 which was the next available date that mail went out. Secondly, I was unaware of the staff giving me an opportunity to get my property Feb 19, 2015 because nobody told me. Lastly, I did have a disiplive incident on Feb 19, 2015 but I never misused any papers so per policy and administrative rules the staff could have given it to me but they choose to not give it to me. For all the above-list reasons my grievances and grievance appeal that are enclosed should be reconsidered. thanks!" On March 13, 2015, instead of adequately allowing Plaintiff's grievance appeal to be processed James Taylor still denied Plaintiff's grievance appeal to be processed, therefore making the administrative remedy ineffective, unobtainable, unduly, prolonged, inadequate or obviously futile since Plaintiff demonstrated why the grievance appeal could not be filed within the timeline established by rule based on him being physical incapable of filing it on time.

Defendant Rochester created unnecessary obstacles in obtaining legal material based on the lack of an adequately designed I.M.U. cell delivery system for law library services at S.R.C.I. which would aware Prisoners of all available avenues in their access to law library services instead of being a unaround guessing game styled system, therefore impeding, obstructing and frustrating Plaintiffs ability to present his litigation effectively and adequately by accessing all law library services available to Prisoners in I.M.U. at SRCI

## I. EXHAUSTION OF ADMINISTRAIVE REMEDIES

Page ___34___ of __53__ : Civil Complaint

The Plaintiff has exhausted his administrative remedies with respects to all state defendants and claims through the grievance.

## VI. CLAIMS OF RELIEF

A. Constitutional Violations:

(1) State defendants Bryant-Kaae, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and Franke actions and/or failure to act in-regards to their Knowingly and unlawful denial and interference of Plaintiffs legal Privileged correspondence and access to court, being done so intentional, deliberate, reckless and callous as to demonstrate or substantial lack of concern of whether an injury resulted and their acts and/or indifference and/or omissions were the direct and proximate cause to Plaintiff suffering actual injury by being impeded, obstructed and/or frustrated in bringing a non-frivolous claims about his criminal conviction or sentence in violation of the Privileges and Immunities Clause of Article IV of the U.S. Constitution, First Amendment Petition Clause of the U.S. Constitution and the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff Pleads and establishes the following factors in accordance with U.S. Constitution and all other factors addressed throughout this complaint!

(a) States defendants Bryant-Kaae, Nooth, Gilmore, Bell, Peters, Mackenzie, Gower and Franke actions and/or failure to act resulted in the denial and interference with Plaintiffs legal Privileged correspondence and access of court, through the misapplication of administrative rules of the legal mail delivery Process, inadequately tracking legal mail delivery Process system, untimely mail delivery and concealing and/or disposing of the legal envelope and letter impeded, obstructed and frustrated Plaintiffs ability to present his litigation effectively and adequately by opposing defendants Coleman and Woods Clients motion to quash deposition with substantial evidence;

(b) Plaintiff brought forth a non-frivolous Tort claim suit about against Product liability and negligence resulting in his criminal conviction or sentence which was dismissed in connection

Page 35 of 53 : Civil Complaint

to the denial and interference of Plaintiffs legal Privileged correspondence, and access of court causing actual injury; and

(c) States defendants Bryant-Kane, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and Franke are additional liable for the following set-forth reasons:

(i) State defendants Bryant-Kane, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and Franke acted under the color of law in their capacity as state officials;

(ii) State defendants Bryant-Kane, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and Franke acts and/or failures omissions constituted intentional, deliberate, reckless and callous indifference to Plaintiffs legal Privileged correspondence, and access of court which is a clearly established constitutional law of the United States; and

(iii) State defendants Bryant-Kane, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and Franke acts and/or omissions was the direct and Proximate cause of the injury and consequent damage to the Plaintiff, by them setting into motion a series of acts that caused the dismissal of his lawsuit.

(d) State defendant Rochester, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and Franke actions and/or failure to act in-regards to their knowingly and unlawful denial and interference of Plaintiffs Professional representation, free speech, rights of association and access of court being done so intentional, deliberate, reckless and callous as to demonstrate or substantial lack of concern of whether an injury resulted and their acts and/or indifferences and/or omissions were the direct and/or and Proximate cause to Plaintiff suffering actual injury by being impeded, obstructed and frustrated in bringing a non-frivolous claims about his criminal conviction or sentence in violation of the U.S. Privileges and Immunities Clause of Article IV of the U.S. Constitution, First Amendment Petition Clause of the U.S. Constitution and the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff Pleads and establishes the following factors in accordance with U.S. Constitution and all other factors addressed throughout this complaint:

(a) State defendant Rochester, Peters, Nooth, Gilmore, Bell, Mackenzie, Gower and

Page __36__ of __53__ : Civil Complaint

Franke actions and/or failure to act resulted in the denial and interference with Plaintiffs right to Professional representation, free speech, right of association and access of court through misapplication of administrative rules and inadequate access to specific legal research material such as the Oregon State Bar Dictionary and Phonebook and indigent legal envelopes, therefore impeding, obstructing and frustrating Plaintiffs ability to present his litigation effectively and adequately by consulting and retaining an attorney for representation; and

(b) Plaintiff asserts claims addressed in Article VI, Section A, subsection (c)(1)(b) (ii) in this complaint in a manner that is in accordance with this claim.

(3) State defendants Bryant-Kaae, Peters, Nooth, Gilmore, Bell, Damon, Mackenzie, Gower and Franke actions and/or failure to act in-regards to their knowing and unlawful interference [deprivation] of Plaintiffs Professional representation, free speech, rights of association and access of court being done so intentional, deliberate, reckless and callous as to demonstrate or substantial lack of concern of whether an injury resulted and their acts and/or indifference and/or omissions were the direct and proximate cause to Plaintiff suffering actual injury by being impeded, obstructed and/or frustrated in bringing a non-frivolous claims about his criminal conviction and sentence in violation of the Privileges and Immunities Clause of Article IV of the U.S. constitution, First Amendment Petition Clause of the U.S. constitution and the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. constitution. Plaintiff pleads and establishes the following factors in accordance with U.S. Constitution and all other factors addressed throughout this complaint:

(a) State defendant Bryant-Kaae, Peters, Nooth, Gilmore, Bell, Damon, Mackenzie, Gower and Franke actions and/or failure to act resulted in the interference with Plaintiffs right to Professional representation, free speech, right of association and access of court by misapplying administrative rules through allowing Plaintiff one collect call to consult and retain an attorney each scheduling and/or authorizing policies that only allow Plaintiff the access to consult and retain an

Page __37__ of __53__ : Civil Complaint

attorney through a collect call when is within a 30 days deadline which impeded, obstructed and frustrated Plaintiffs ability to present his litigation effectively and adequately by consulting and retaining an attorney for representation; and

(b) Plaintiff asserts claims addressed in Article VII, section A, subsection (1)(b) to (c)(i) to (iii) in this complaint in a manner that is in accordance with this claim.

(4) State defendants Rochester, Peters, Nash, Gilmore, Bell, Mackenzie, Gower and Franke actions and/or failure to act in-regard to their knowing and unlawful interference of Plaintiffs access to court being done so intentional, deliberate, reckless and callous as to demonstrate or substantial lack of concern of whether an injury resulted and their acts and/or indifferences and/or omissions were the direct and proximate cause to Plaintiff suffering actual injury by being impeded, obstructed and/or frustrated in bringing a none frivolous claims about his criminal conviction and sentence in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff pleads and establishes the following factors in accordance with U.S. Constitution and all other factors addressed throughout this complaint:

(a) State defendant Rochester, Peters, Nash, Gilmore, Bell, Mackenzie, Gower and Franke actions and/or failure to act resulted in the interference with Plaintiffs access of court through unnecessary obstacles in Plaintiff obtaining legal material based on the lack of an adequately designed I.M.U. cell delivery system for law library services at SRCI which would aware prisoners of all available avenues in their access to law library services instead of being a none word guessing game style system, therefore impeding, obstructing and frustrating Plaintiffs ability to present this litigation effectively and adequately by accessing all law library services available to prisoners in IMU at SRCI.

(b) Plaintiff asserts claims addressed in Article VII, section A, subsection (1)(b) to (c)(iii) in this complaint in a manner that is in accordance with this claim.

Page 38 of 53 : Civil Complaint

(5) State defendants Hascall, Peters, Gower and Franke actions and/or failure to act in-regards to their knowing and unlawful denial and interference of Plaintiffs access to court being done so intentional, deliberate, reckless and callous as to demonstrate or substantial lack of concern of whether an injury resulted and their acts and/or indifference and/or omissions were the direct and proximate cause to Plaintiff suffering actual injury by being impeded, obstructed and/or frustrated in bringing a non-frivolous claims about his criminal conviction and sentence in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff pleads and establishes the following factors in accordance with U.S. Constitution and all other factors addressed throughout this complaint:

(a) State defendant Hascall, Peters, Gower and Franke actions and/or failure to act resulted in the denial of Plaintiff access of the court through withholding and/or concealing specific legal research material when administrative rules allows access to it and the interference with Plaintiffs access of court through unnecessary obstacles in obtaining legal material based on the lack of an adequately designed DSU cell delivery system for law library services at E.O.C.I. which would aware Prisoners of all available avenues in their access to the law library services instead of being ruranind guessing game style system, therefore impeding, obstructing and frustrating Plaintiffs ability to New present his litigation effectively and adequately by accessing law library services available to Prisoners in DSU at E.O.C.I; and

(b) Plaintiff asserts claims addressed in Article II, section A, subsection (1)(b) to (c)(iii) in this complaint in a manner that is in accordance with this claim.

(c) Defendant Coleman and Wood actions and/or failure to act in-regards to their knowing and unlawful denial and interference of Plaintiffs access to court being done so intentional, deliberate, reckless and callous as to demonstrate or substantial lack of concern of whether an injury resulted and their acts and/or indifference and/or omissions were the direct and proc-

Page __39__ of __53__ : Civil Complaint

timate cause to Plaintiff suffering actual injury by being impeded, obstructed and/or frustrated in bringing a non-frivolous claims about his criminal conviction and sentence in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff pleads and establishes the following factors in accordance with U.S. Constitution and all other factors addressed throughout this complaint:

(a) Defendant Coleman and Wood actions and/or failure to act resulted in the denial and interference of Plaintiff's access to court through fraudulent and active concealment of his discovery request when they were beating around the bush and not directly answering his admission request, therefore impeding, obstructing and/or frustrating Plaintiff's ability to present his litigation effectively and adequately by preventing him from providing evidence to the foreseeability elements through knowledge of a risk of harm based on the dangerous characteristics of his Michael Jordan tennis shoes and the vulnerability he was subjected to for the failure to warn or instructioning him of the potential that those tennis shoes could be classified as dangerous weapons when used in certain circumstances making them readily capable of causing death or serious physical injury; and

(b) Plaintiff asserts claims addressed in Article VI, Section A, subsection (1)(b) to (d)(iii) in this complaint in a manner that is in accordance with this claim.

B.    Tort Violations:

(1) Nike Inc., Phil Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to properly instruct or warn regarding their knowledge of their products potential dangerous characteristics subjected Plaintiff to be in a vulnerable situation which was done intentional, deliberate, reckless and calleous as to demonstrate a substantial lack of concern of whether an injury resulted and their acts and/or indifference and/or omissions were the direct and proximate cause of, Plaintiff injury since they have

Page __40__ of __53__ : Civil Complaint

a standard of care to Protect against unreasonable danger that is not generally known by to Plaintiff and consumers but is known or reasonably should have been known, the manufacturer, distributor, seller or lesser which constituted the tort of Product liability. Plaintiff Pleads and establishes the following factors in accordance with the tort law in the state of oregon and all other factors addressed throughout this complaint:

(a) Nike Inc., Philp Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn Plaintiff of the dangerous characteristics of their manufactured and distributored Michael Jordan tennis shoes when they knew or reasonably should have known that it would subject him to be vulnerable to a foreseeable risk of harm as to the deprivation of his liberty interest right resulting in him being sentence to 100 years of imprisonment, do in Part to Plaintiff being convicted of Assault in the second degree and Robbery in the first degree based upon the Prosecutors theory that Plaintiff used a dangerous weapon, i.e. Michael Jordan tennis shoes;

(b) The Michael Jordan tennis shoes were unreasonably dangerous since a jury found on July 19, 2013 that under the dangerous weapon statute of oregon that the tennis shoes " under the circumstances" that they were used which was kicking are dangerous weapons;

(c) The Michael Jordan tennis shoes are not generally known to be classified as being or having the Potential of being dangerous weapons to the Plaintiff and consumer but is known or reasonably should have been known to Nike Inc., Philp Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre which they have a duty of standard of care to warn or instruct against unreasonable danger in their Product since they are the Manufacturers and/or distributors;

(d) The deprivation to Plaintiffs liberty interest right could have been Preventable by Proper instructions or warning of the dangerous characteristics that Michael Jordan tennis

Page 41 of 53 : Civil Complaint

Shoes were radily cupable of being classified as dangerous weapons;

(e) Nike Inc., Philip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn constituted intentional, deliberate, reckless and calleaous indifference to Plaintiff's consumer and liberty interest rights to be free from unreasonable danger and/or vulnerability to unreasonable danger in defected Products which is a clear established tort law of the state of Oregon; and

(f) Nike Inc., Philip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn ~~constituted~~ was the direct and Proximate cause of the injury and consequent damage to the Plaintiff.

(g) Nike Inc., Philip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn was with Knowledge of their Products Potential dangerous characteristics subjected Plaintiff to be in a vulnerable situation which was done intentional, deliberate, reckless and calleaus as to demonstrate a ~~studered~~ substantial lack of concern for whether severe emotional and mental distress resulted in accordance to at least one of the ways claimed against them and their acts and/or indifference and/or omissions are the direct and Proximate cause of Plaintiff injury since they have a standard of care to Protect against unreasonable danger that is not Generally known to Plaintiff and consumer but is known or reasonably should be been known by the manufacturer, distributor, seller or lesser which consisted of some extraordinary transgression of socially tolerable behavior on social standards at the time of that incident, therefore constitutes the tort of Intentional and Reckless Infliction of Severe Mental and Emotional Distress. Plaintiff Pleads and establishes the following factors in accordance with the tort in the state of Oregon and all other factors addressed throughout this complaint:

(a) Nike Inc., Philip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn intentionally, calleausly, deliberately

Page 42 of 53 : Civil Complaint

and recklessly inflicted severe emotional and mental distress on Plaintiff and/or knew or reasonably should have known that severe emotional and mental distress would substantially resulted from their actions and/or omissions as addressed in Article VI, Section B, subsection (1) to (3) of this Complaint;

(b) Nike Inc., Phillip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn caused Plaintiff severe emotional and mental distress, since it set into motion for Plaintiff to be in a vulnerable situation which allowed others to inflict the Punishment of a severe Sentence in Prison;

(c) Nike Inc., Phillip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn consisted of some extraordinary transgression of socially tolerable behavior on social standards at the time of the incident since they have a duty of standard of care to warn or instruct against unreasonable danger in their Product since they are the Manufacturers and/or distributors but instead set into motion for Plaintiff to be in a vulnerable situation which allowed others to inflict the Punishment of a severe Sentence in Prison which socially expects them to Preform duties to warn or instruct from unreasonable danger in their Product;

(d) Plaintiff asserts claims addressed in Article VI, Section B, subsection (1) to (3) in this Complaint in a manner that is in accordance with this claim.

(3) Nike Inc., Phillip Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn was with neglectand Knowledge of their Products Potential dangerous characteristic's subjected Plaintiff to be in a vulnerable situation which was done intentional, deliberate, reckless and calleous as to demonstrate a substantial lack of concern for whether an injury resulted in accordance to at least one of the ways claimed against them and their acts and/or indifference and/or omissions are the direct and Proximate cause

Page  43  of  53  : Civil Complaint

of Plaintiff injury since they have a standard of care to Protect against unreasonable danger that is not generally known to Plaintiff and consumer but is known or reasonably should been known by the manufacturer, distributor, seller or lesser which constitutes the tort of Negligence. Plaintiff Pleads and establishes the following factors in accordance with the tort law, in the State of Oregon and all other factors addressed throughout this complaint:

(a) Nike Inc., Phil Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn Subjected Plaintiff to foreseeable harm as to the torts addressed in Article II, Section B, subsection (1) to (3) of this complaint which was apparent since they knew or should have known that they had a duty to follow a standard of care to Protect Plaintiff from unreasonable risk but failed to Perform that duty;

(b) The risk is to an interest of a kind that the law Protects against because Plaintiff has a right to be instructed and/or warn of the dangerous characteristics of an manufacturers, distributors, sellers or lessers Product and not to be Placed into a vulnerable situation which allows others to inflict Punishment of a severe sentence in Prison because of the failure Instruct and/or warn as addressed in Article II, Section B, subsections (1) to (3) of this complaint;

(c) Nike Inc., Phil Knight, Mark Parker, Jeanne Jackson, Trevor Edwards, Hilary Krane and David Ayre failure to Provide instructions and/or warn were unreasonable in light of the risk because Plaintiff has a right to Provided instructed and/or warn of unreasonable danger which is generally not known to the consumer but known or reasonable should been known by the manufacturer, distributor, seller or lesser which they chose instead to breach that was standard of care duty; and

(d) Plaintiff asserts claims addressed in Article II, Section B, subsection (1) to (3) in this complaint in a manner that is in accordance with this claim.

Page  44  of  53   : Civil Complaint

(4) Defendants Coleman and Wood actions and/or failure to act in-regard to their Knowingly denial and interference of Providing Plaintiff with a required standard of care, skill and diligence which would ordinarily be used by lawyers in the community in similar circumstances were done so intentional, deliberate, reckless and calleous as to demonstrate a substantial lack of concern of whether an injury resulted and their acts and/or indifference and/or omissions were the direct and Proximate cause of Plaintiff injury which constitutes the tort of Professional Mal Practice. Plaintiff Pleads and establishes the following factors in accordance with the tort law in the state of Oregon and all other factors addressed throughout this complaint:

(a) Defendants Coleman and Wood actions and/or failure to act resulted from their Knowingly denial and interference of Providing Plaintiff with a required standard of care, skill and diligence which ordinarily be used by lawyers in the community in similar circumstances when defendants Coleman and Wood fraudulently and actively concealed Plaintiffs discovery request when they were beathing around the bush and not directly answering admission request; and

(b) Plaintiff asserts claims addressed in Article VI, Section A, subsection (6)(a) to (b) and Article VI, Section B, subsection (4) and (5) in this complaint in a manner that is in accordance with this claim.

(5) Defendants Coleman and Wood actions and/or failure to act was in neglect to Article VI, Section A, subsection (6)(a) to (b) and Article VI, Section B, subsection (4) and (5) in this complaint which was with Knowledge and done so intentional, deliberate, reckless and calleous as to demonstrate a substantial lack of concern for whether an injury resulted and these acts and/or indifference and/or omissions were the direct and Proximate cause of Plaintiff's injuries since they have a required duty to Provide them use a specific standard of care, skill and diligence which would ordinarily be used by lawyers in the community in similar circumstances which constituted the tort of Negligence. Plaintiff Pleads and established the following factors in accordance with the tort law in the state of Oregon

Page 45 of 53 : Civil Complaint

and all other factors addressed through this complaint.

(a) Defendants Coleman and Wood actions and/or failure of act subjected Plaintiff to a foreseeable harm as to the violations and torts addressed throughout Article VI, section A, subsection (6)(a) to (b) and Article VI, section B, subsection (4) and (5) of this complaint which was apparent since they knew or should have known that they had a duty to use a specific standard of care, skill and diligence which would ordinarily be used by lawyers in the community in similar circumstances but they failed to perform that duty;

(b) The risk is to an interest of a kind that the law protects against because Plaintiff has a right to not have his discovery request during civil litigation be fraudulently and actively concealed by them beating around the bush and not directly answering admission request which is addressed in Article VI, section A, subsection (6)(a) to (b) and Article VI, section B, subsection (4) and (5) of this complaint;

(c) Defendants Coleman and Wood conduct was unreasonable in light of the risk because Plaintiff has a right for them to provide him with a standard of care, skill and diligence which would ordinarily be used by lawyers in the community in similar circumstances but instead they chose to breach that duty by fraudulently and actively concealing Plaintiffs discovery request when they were beating around the bush and not directly answering admission request; and

(d) Plaintiff asserts claims addressed in Article VI, section A, subsection (6)(a) to (b) and Article VI, section B, subsection (4) and (5) of this complaint in a manner that is in accordance with this claim.

(6) State defendants Hascall, Rochester, Bryant-Kade, Peters, Nash, Gilmore, Bell, Doman, Mackenzie, Gower and Franke actions and/or failure to act was in neglect to at less one of the ways claimed in Article VI, section A, subsection (1) and (5), Article VI, section B, subsection (6) and Article VI, section C in this complaint which was with knowledge and done so intentional, deliberate, reckless and callous as to demonstrate a substantial lack of concern for whether an injury resulted

Page 46 of 53 : Civil Complaint

and these acts and/or indifference and/or omissions were the direct and proximate cause of Plaintiff's injuries since they have a duty to protect against unreasonable harm to his rights which constituted the tort of Negligence. Plaintiff pleads and establishes the following factors in accordance with the tort law in the state of Oregon and all other factors addressed throughout this complaint:

(a) All the state defendants actions and/or failure to act subjected Plaintiff to foreseeable harm as to the violations and torts addressed throughout Article VI, section A, subsection (1) to (5), Article VI, section B, subsection (6) and Article VI, section C of this complaint which was apparent since they knew or should have known that they had a duty to follow a standard of care to protect Plaintiff from unreasonable risk to his rights but failed to perform that duty;

(b) The risk is to an interest of a kind that the law protects against because Plaintiff has a right to not be denied, interferred, impaired, obstructed, frustrated and impeded legal privileged correspondence, professional representation, access to the court, free speech, rights of association, due process and equal protection which are addressed in Article VI, section A, subsection (1) to (5), Article VI, section B, subsection (6) and Article VI, section C of this complaint;

(c) All the state defendants conduct was unreasonable in light of the risk because Plaintiff had a right to not be denied, interferred, impaired, obstructed, frustrated and impeded with those rights but they chose to breach those duties; and

(d) Plaintiff asserts claims addressed in Article VI, section A, subsection (1) to (5), Article VI, section B, subsection (6) and Article VI, section C in this complaint in a manner that is in accordance with this claim.

C.    Liability:

(1) Defendant Peters is liable for state defendants Gower, Franke, Nooth, Bell, Gilmore, Damon, Mackenzie, Hascall, Rochester, and Brjant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the state of Oregon and all other United States

and all other factors addressed throughout this complaint:

(a) Defendant Peters is the Director of O.D.O.C. which supervises and trains the correctional Public official, and employee in all Prison and correctional institutions in Oregon;

(b) Defendant Peters correctional Public officials such as above listed state defendants have a history of the violations and torts addressed in Article II, section A, subsection (1) to (5), Article II, section B, subsection (6) and Article II, section C in this complaint;

(c) Defendant Peters failed to adequately train and/or supervise her correctional Public officials and employee's so as to Prevent Plaintiff to the violations and torts addressed in Article II, section A, subsection (1) to (5), Article II, section B, subsection (6) and Article II, section C in this complaint;

(d) Defendant Peters failed to adequately supervise, review, discipline and/or control her correctional Public officials and employee whom she knew or should have known were violating or Prone to violate Prisoners rights and subjecting Prisoners to torts and violations ass addressed in Article II, section A, subsection (1) to (5), Article II, section B, subsection (6) and Article II, section C, thereby Permitting and/or encouraging her correctional Public officials and employee's to engage in their misconduct therefore setting in motion a series of acts that lead to the violates and torts;

(e) Defendant Peters failed to adequately train and/or supervise her correctional Public officials and employee's in the Proper Policies, Procedures and administrative rules to the claims addressed in Article II, section A, subsection (1) to (5), Article II, section B, subsection (6) and Article II, section C in this complaint in-order to aware them of the law;

(f) Defendant Peters acted under the color of law in her capacity as a correctional Public official;

(g) Defendant Peters actions and/or omissions constituted intentional, deliberate, reckless and callous indifference to Plaintiff's right to not be denied, interferred, impaired, obstructed, frustrated and impeded legal Privileged correspondence, Professional representation, access to the court, free speech,

Page __48__ of __53__ : Civil Complaint

rights of association, due Process and equal Protection which is clear established through the constitutional, statutory, tort and administrative law of the state of Oregon and United states;

(h) Defendant Peters actions and/or omissions were a direct and Proximate cause of the injury and consequent damage; and

(i) Defendant Peters intentionally Promoted and facilitated the commission of state defendants misconduct by failing to make an effort within defendant Peters legal duty to Prevent the commission of their violations and torts when the correctional Public officials and employees have a history in committing the violations and torts addressed in Article VI, section A, subsection (1) to (5), Article VI, section B, subsection (6) and Article VI, section C in this complaint, thereby Permitting and/or encouraging in correctional Public officials and employees to engage in these violations and torts therefore setting in motion a series of acts that lead to the violation and torts.'

(2) State defendant Gower is liable for state defendants Franke, Nooth, Bell, Gilmore, Digman, MacKenzie, Hascall, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the United States and state of Oregon and all other factors addressed throughout this complaint:

(a) State defendant Gower is the Assistant Director of O.D.O.C. which supervises and trains the correctional Public officials and employees in all Prison and correctional institutions in Oregon; and

(b) Plaintiff asserts claims addressed in Article VI, section C, subsection (1)(b) to (i) in this complaint in a manner that is in accordance with this claim.

(3) State defendant Franke is liable for state defendants Nooth, Bell, Gilmore, Digman, MacKenzie, Hascall, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the United States and state of Oregon and all other factors addressed throughout this complaint:

(a) State defendant Franke is the East Institutions Administrator of O.D.O.C. which supervi-

Page 49 of 53 : Civil Complaint

ises and trains the correctional Public officials and employee's in all Prisons and correctional institutions in Oregon; and

(b) Plaintiff asserts claims addressed in Article III, section C, subsection (1)(b) to (i) in this complaint in a manner that is in accordance with this claim.

(2) State defendant Nooth is liable for state defendants Bell, Gilmore, Damon, Mackenzie, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the United States and State of Oregon and all others factors addressed throughout this complaint:

(a) State defendant Nooth is the Superintendent during the time relevant to this complaint, in charge of the supervision to I.M.U. at SRCI; and

(b) Plaintiff asserts claims addressed in Article III, section C, subsection (2)(b) to (i) in this complaint in a manner that is in accordance with this claim.

(3) State defendant Bell is liable for state defendants Gilmore, Damon, Mackenzie, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the United states and state of Oregon and all other factors addressed throughout this complaint:

(a) State defendant Bell is the Assistant Superintendent of Correctional Rehabilitation services during the time relevant to this complaint, in charge of the supervision to I.M.U. at S.R.C.I.; and

(b) Plaintiff asserts claims addressed in Article III, section C, subsection (3)(b) to (i) in this complaint in a manner that is in accordance with this claim.

(4) State defendant Gilmore is liable for state defendants Bell, Damon, Mackenzie, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the United States and State of Oregon and all other factors addressed throughout this complaint:

Page 50 of 53 : Civil Complaint

(a) State defendant Gilmore is the Assistant Superintendent of security during the time relevant to this complaint, in charge of the supervision to I.M.U. at SRCI;

(b) Plaintiff asserts claims addressed in Article III, section C, subsection (1)(b)(b)(i), in this complaint in a manner that is in accordance with this claim

(5) State defendant Daman is liable for state defendants Mackenzie, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the united States and state of Oregon and all other factors addressed throughout this complaint:

(a) State defendant Daman is the Correctional Rehabilitation Service Manager, (during the time relevant to this complaint, in charge of the supervision to law library services and inmate legal services to I.M.U. at S.R.C.I.; and

(b) Plaintiff asserts claims addressed in Article III, section C, subsection (1)(b)(b)(i) in this complaint in a manner that is in accordance with this claim.

(6) State defendant Mackenzie is liable for state defendants Daman, Rochester and Bryant-Kaae conducts against Plaintiff for the following factors in accordance with administrative law, tort law and constitutional law in both the united States and state of Oregon and all other factors addressed throughout this complaint:

(a) State defendant Mackenzie is the Correctional Rehabilitation Service Manager, in charge of the supervision to law library services and inmate legal services to I.M.U. at S.R.C.I.; and

(b) Plaintiff asserts claims addressed in Article III, section C, subsection (1)(b)(b)(i) in this complaint in a manner that is in accordance with this claim.

## III. RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief.

A. Issue A Declaratory Judgment stating that:

(1) State defendants Peters, Gower, Franke, North, Bell, Gilmore, Daman, Mackenzie,

Page _51_ of _53_ : Civil Complaint

Has call, Rochester and Bryant-Kaae actions and/or omissions described herein violated Plaintiffs rights under 42 U.S.C. § 1983 in violation of the Privileges and Immunities clause of Article III of the U.S. Constitution, First Amendment Petition Clause of the U.S. Constitution and Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; and violating the tort of Negligence.

(2) Defendants Coleman and Wood actions and/or omissions described herein violated Plaintiffs rights under 42 U.S.C. § 1983 in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; and violating the tort of Negligence and Professional Malpractice.

B.    Issue An Injunction Ordering Defendant Peters or Her Agents To:

(1) Develope and Imply a system through establishing Oregon Administrative Rules that will train, supervise and discipline correctional Public officials and employee on Pro se Prisoners and Special Housing Prisoners with their access to law library services and inmate legal services that is similar to Oregon State Penitentary for all correctional facilities such as access to services that will adequate assistance in consulting and retaining Professional representation, step-by-step guide book that will Provide information on all legal material available for each facilities special housing and that all facilities mailing service has a tracking data logging system for mail that be develope to keep track of all mail while Prisoners are currently in the custody of O.D.O.C. Correctional facilities which Prisoners will have access to get a Print out of all tracked mail if requested by the Prisoner. and

(2) Require all O.D.O.C. officials and employee dealing with I.M.U. Prisoner to be subjected to the rules under OAR 291-055-0014

C.    Award Compensatory Damages In The Following Amount:

(1) #107,000,000.⁰⁰ Jointly and severally against all defendants to reimburse Plaintiff

Page __52__ of __53__ : Civil Complaint

for actual injury to his civil litigation being dismissed as a result of defendants denial, interference, impairing, frustrating, obstructing and impeding misconduct to Plaintiffs right to legal Privileged correspondence, Professional representation, access to the court, free speech, rights of association, due Process and equal Protection

(a) $4,000,000.00 Jointly and severally against all defendants for denial and interference with legal Privileged correspondence, Professional representation, access to the court, free speech, rights of association, due Process, equal Protection, nightmares, sleep deprivation, fear, shock, anxiety, Paranoia, mental anguish, shame and humiliation, mental degradation, shame, indignity and disgrace.

D.    Award Punitive Damages In The following Amount:

(1) $100,000.00 severally each against all defendants for all the damage injuries addressed in Article VII, section C of this complaint.

E.    Grant such other Just and equitable relief as it may appear the Plaintiff is entitled which this Honorable Court deems necessary.

DATED this 18th day of October 2015

Sir Giorgio Sanford Clardy
Plaintiff - In Pro se Counsel

CERTIFICATE OF SERVICE

COMES NOW, Sir Giorgio Sanford Clardj, certifies that on the 3rd day of November, 2015, I Personally Placed in the correctional Institutions mailing service A TRUE COPY of "Verified Civil Complaint With Jury Demand", "Civil Cover Sheet", "Declaration In support of Verified Civil Complaint With Jury Demand", "Application to Proceed In Forma Pauperis", "Six-Month Print-out" and "Certificate". I Placed the above in a securely enclosed, Prepaid Postage envelope, to the Person named at the Placeaddressed below:

Clerk of the Court

1000 S.W. Third Avenue suite 740

Portland OR 97204-2902

Sir Giorgio Sanford Clardj

Plaintiff - In Pro Se Counsel

Page 1 of 1 : Certificate of Service